The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning, Counsel. We are prepared to move ahead with 19-1209, Hixson v. Moran. And Ms. Cantelina, we'd be pleased to hear from you. Thank you, Your Honor. May it please the Court, my name is Catherine Cantelina and I'm appearing on behalf of Appellant Carey Hixson. First and foremost, this Court does not have jurisdiction to hear this appeal because the District Court has not issued a final judgment. Our client's claim is not that he was deprived of insulin, it's that he was denied medical care for his diabetes. In ruling solely on the issue of Dr. Moran's denial of insulin, the District Court ruled on only one of the multiple modalities by which Dr. Moran could have rendered care. Moreover, the District Court committed three points of reversible error when it incorrectly applied the standard of summary judgment, when it incorrectly stated the law on deliberate indifference, and erred in analyzing Hixson's gross negligence claim. I'll first discuss this Court's lack of jurisdiction, and then the three points of reversible error from the District Court. This Court of Appeals does not have the jurisdiction to hear this case because there are still live, unresolved claims at the trial level because the District Court failed to analyze Hixson's claim that he needed oral medication. An order is non-final if the District Court has not adjudicated all of the claims in the case. Moreover, under Hemingway v. Chapman and Davis v. Bishop, both cases decided by this Court, an order is non-final also when a District Court fails to address a claim in its entirety. In Davis v. Bishop, the Court of Appeals had no jurisdiction when the District Court analyzed only one fact pattern under a legal theory, but omitted the analysis of the second fact pattern under the theory. In Hemingway, the District Court construed the plaintiff's Bivens claim and medical malpractice claims as relating only to the denial of insulin. That's most similar to this case, where the claims were properly construed as relating to the denial of insulin, but also another injury that the plaintiff received. Why wouldn't the claim here be simply a failure to treat the appellant's diabetes? I mean, the District Court did address that. Thank you, Your Honor. So the claim here, it is a claim. You're correct that it's a claim of a failure to treat diabetes. But the issue is that the District Court only addressed in its opinion one of the methods by which diabetes could be treated. But I mean, we're going to be driving District Courts crazy if we try to go at these things medication by medication. I mean, all of these claims have factual subsets to them, but the question is whether the District Court really addressed the claim as a whole. And what you were claiming was that there was deliberate indifference in the failure to treat diabetes, and the District Court addressed that. Your Honor, it's our position that the District Court didn't address it, not because necessarily the issue is that it didn't address each type of medication that Dr. Moran didn't provide. It's more an issue that he didn't address one of the major claims from our expert, Dr. Roop, who testified that an oral medication such as metformin should be provided. So the issue is that what the District Court said is that Dr. Moran stated a rational reason for not providing insulin. And his rational reason was based on Mr. Hickson's fluctuating blood sugar levels. Why wouldn't the District Court concentrate on insulin, for example, because if you read Hickson's deposition, it stresses insulin. So the District Court would naturally stress that. And really, the District Court did address all the medications. It didn't address insulin. The question is, was it wrong in putting the emphasis on the insulin? And I'm not sure that it was wrong to put the emphasis on the insulin when Hickson himself put the emphasis on the insulin. Sure, Your Honor. Our position is that the issue isn't necessarily emphasis so much as the District Court did not provide a reason that he wouldn't have given Mr. Hickson oral medication at all. There's no reason that he should not have been given metformin. Sorry, this is Judge Freshing. I'm not sure that that's correct. The way I read the District Court opinion, the District Court concludes that the doctor did not have the requisite state of mind and took some action. Why doesn't that reasoning cover insulin, other medications? It seems like it would cover everything that Mr. Hickson claims he should have received. The court wasn't going medication by medication and saying, this is reasonable, this was not. Rather, the court said, the state of mind is missing here. And the doctor took some action. And that would appear to cover every permutation of your client's claim. Sure. So, Your Honor, our issue here is not necessarily – as to the issue of jurisdiction, we're not really talking about the culpable – our argument is not about the culpable state of mind as to the subjective prong of the deliberate indifference claim. I could talk about that. That's one of the points of error that we – But doesn't that – I mean, doesn't that resolve every part of the claim? And so whether the judge specifically said this applies both to the insulin state of facts and to the other medication state of facts, we can look and see that the court's reasoning was sufficient to dispose of the entire case. So doesn't that render it a final judgment? I suppose I would direct Your Honor to Hemingway v. Chapman, where the issue of these two separate injuries still – this court still said that there was no jurisdiction where both of the separate types of treatment were not addressed. So, in short, you have an issue where you have a plaintiff who is bringing a claim, and it's not – the claim is not necessarily for the denial of one specific medication. And it's not for – it's not broken out into denial of insulin and denial of metformin so much as the subjective state of mind that caused him to – okay, this was his reason for not providing insulin, but also, given that the blood sugar levels were continuing to rise and his A1C level was continuing to rise, what caused him to not provide some sort of alternative treatment such as metformin? I don't understand why the gist of the thing isn't right here before us, front and center, because when you say, well, he was deliberately indifferent, and this really relates to Judge Rushing's comments. But when you say he was or was not deliberately indifferent in the face of the claim of treatment of diabetes, if you're making that claim, that would – the deliberate indifference would cover the full course of care, one medication as well as another, one possible route of treatment as opposed to another. Well, one thing I'm concerned about is simply hectoring and harassing district courts with an endless series of remands, as far as I could say. This is a very conscientious district judge who addressed this claim very conscientiously. Sure. And as to the claim of deliberate indifference, it's our position that the issue was not sort of failing to address one versus another, and we certainly don't want district courts to have to be in this position where they have to run down every single medication that wasn't given. Our issue is that it created a triable issue of fact. The district court, in fact, erred in analyzing the subjective prong of the deliberate indifference standard. Well, it might have created a triable issue of fact if the standard had been one of negligence, and what you have here are dueling experts. Oddly enough, the plaintiff's expert never practiced in a prison facility, and the plaintiff doesn't even seem to acknowledge the testimony of the defendant's experts. But when you have a battle of experts, that would be enough to establish perhaps an issue of triable fact if the governing standard were one of negligence. But I don't think we've ever held a battle of qualified experts, and surely the defendant's expert was qualified under Daubert, but a battle of experts doesn't generally establish an issue of triable fact under deliberate indifference. It would maybe under negligence, but the deliberate indifference standard is there for a reason, and Estelle Gamble, which is the fountainhead case for all of this, stresses that it's deliberate indifference because we don't want these claims to just proliferate. And what has happened here is that the deliberate indifference standard has over the years been, in some instances and in some quarters, diluted and watered down into a negligence standard, and that's not the direction the Supreme Court hoped it would go or wanted it to go. And too often this happens, is that the standards of review that the Supreme Court promulgates in a limited fashion come down here and they get expanded and diluted. And it seems to me that's what happens here if you take a battle of experts, one of which was clearly qualified, the other of which had never practiced in a prison facility, and you say, oh, well, that creates a triable issue over deliberate indifference. I just, I don't get that. Sure. So, Your Honor, I think that we're now sort of talking about the standard of a reasonable action, because this is, so under the Farmer v. Brennan test, the district court did acknowledge that the harm was sufficiently serious. As to whether the actions that they took, that Dr. Moran took in the face of that harm, were reasonable, even if the harm was ultimately not adverted, the following issues, we say Isn't reasonableness a negligence concept? Well, this is under Farmer v. Brennan. The two prongs are, one, that the harm was sufficiently serious, two, that the defendant had a sufficiently culpable state of mind, but as Farmer v. Brennan said, even if both of those prongs are met, if the How can it be deliberate indifference when Dr. Moran ordered tests as to blood sugar and ordered a diabetic diet to be instituted? And, you know, you may not agree with the course of treatment, but how can it be deliberate indifference? Well, Your Honor, we believe that adding the tests as to blood sugar, if anything, run to his state of mind under the second prong of Brennan, showing that he appreciated a substantial risk of harm, but that he did nothing. We have a plaintiff's excerpt who says that Deliberate indifference means the intentional disregard of a known risk. And I don't see that in Dr. Moran's activities. It's highly debatable in diabetic treatments, whether one gives insulin and when one gives insulin. And you've heard of side effects, haven't you? Yes, Your Honor. And those go with any prescription medication. And if you give, and I think this is fairly general knowledge, but if you give insulin when someone's blood sugar is really low, that leads to hyperglycemia or it can. And the symptoms of hyperglycemia range from uncontrollable shakings to a disruption of heart rhythms and heart palpitations. And in the most serious cases, which are a minority admittedly, but they are there, insulin can induce a coma if it's given under the wrong conditions. And so you have a prison doctor who's fairly cautious and says, look, I want to, you know, to the degree that I can do anything, I'm going to monitor the blood sugar level and order a diabetic diet. If he'd given the insulin and there'd been untoward consequences, we'd have another lawsuit. And it would have been a far more serious one than this. Sure. Sorry, I wasn't sure what that sound was. Go ahead. You may finish your thought, Ms. Catalina, please. Sure. So, you know, as to the insulin inducing hypoglycemia, that is why other oral medications exist, such as metformin. And thank you. I've taken some of your time, Ms. Catalina. I want to make sure you had a chance to get your argument. So please continue. Sure. Okay. Thank you. So it's our position that the district court misapplied the standard of summary judgment and deliberate indifference. And I wanted to just briefly list for you all the facts that demonstrate a triable issue that Moran actually appreciated a risk of serious harm. So, one, Hickson's blood sugar was checked every day. These records were reviewed by Dr. Moran and the blood sugar level continued to rise. Two, the record indicates his A1C was rising, too, topping out at 10, actually. In December, upon reviewing Hickson's blood sugar readings and noticing that they were rising, Moran actually ordered that Hickson's blood sugar now be checked twice a day. And four, in his deposition testimony, Moran stated he was aware of the negative effects of untreated diabetes on a person and the long-term potential negative effects of leaving the disease untreated. I'd also just like to briefly go into the following facts that create a triable issue as to whether Dr. Moran's activities rose to the level of a reasonable response under Farmer v. Brennan. One, his alleged response that he claims was reasonable was putting Hickson on a diabetic diet, but evidence suggests, and our plaintiff's expert suggests, that this was not working because the blood sugar levels continued to rise. Two, Moran claims he didn't provide insulin because he was afraid that the blood sugar would drop too low. And let me ask you this. On page 26 of your opponent's brief, they say, and I'm quoting from it, the undisputed direct evidence shows, quote, that Hickson never complained of symptoms related to diabetes, never submitted a single medical request form related to diabetes, yet managed to do so at least 12 other times for other reasons, never requested to see Dr. Henson for his diabetes, never filed a grievance related to his diabetes, and in his one meeting with Dr. Hickson did not raise the issue of diabetes at all. Now that's what they're claiming on page 26 of their brief, and I wonder how you would respond to that. Sure. Well, Your Honor, Mr. Hickson did complain to the nurses of his blood sugar, and he did plead for insulin. So in the time that he actually went to go and see Dr. Moran, the time that is alleged where he said that he didn't want to get treatment for his diabetes, what happened is the doctor asked him how his diabetes was doing, and he said that he was here for his back pain. At that time, the issue with his back was predominating, but he did plead multiple times with the nurses to get treatment for his diabetes, and no treatment was had. Moreover, under the deliberate indifference standard, a risk that is sufficiently obvious, this runs to a risk that is sufficiently obvious, can create an inference of the knowledge that is necessary under the subjective prong of the deliberate indifference standard. So it is our position that the risk here was sufficiently obvious to create an inference and at least show us, at the end of the day, we'd like this to go before a jury. We'd like Mr. Hickson to have his day in court, and we'd like him to have that because we believe that we have presented multiple triable issues of fact that the district court disregarded. All right, well, thank you. Thank you very much, and I'm going to, before you go away, I want to, and you've got some rebuttal time, too, and I want to make, I'm going to ask each of my co-panelists if they have any further questions of you. Judge Traxler, Judge Russing, do you all have any questions of Ms. Catalina? Judge, this is Judge Traxler. I have two questions I'd like to ask her. Ms. Catalina, I have two questions. The first one deals with the question of whether or not the district court issued a final judgment. The question is this, the situation is this. We see a number of orders from district judges, district courts, and we issue a number of orders ourselves where the court addresses the main issue in the case, and then as to other issues in the case, we simply say we have considered the other issues in the case and we find them to be without merit, and there's no discussion beyond that, no comment beyond that. If a district court issues an order like that, is it your position that that's not a final order? And if it's not, would you please explain why not? No, Your Honor, it's not our position that that would not be a final order. The issue here is that the district court didn't say we have considered the other issues and we consider them to be without merit. It was never touched. So that's all that needs to be said, then? Yes. Okay. Now my second question deals with Dr. Roop's opinion. When I read her report and her testimony, she said very clearly that it was her opinion there was negligence on the part of Dr. Moran, but I didn't see where she said it was more than negligence, that is deliberate indifference. Did I miss something? Is there a page number or site you can give me that would show that? Your Honor, I don't know if she, you know, our plaintiff's expert is, you know, a doctor. I don't know if she used specifically the term deliberate indifference. We assert based on her testimony that it's deliberate indifference because there was a subjective awareness of the serious, because there are facts which indicate a subjective awareness of the serious harm on the part of Dr. Moran and facts which indicate that he did nothing in the face of it. Well, you say that, but she doesn't say that, does she? Sure. I mean, Your Honor, I don't think that she really would be specifically qualified to say whether legally there was deliberate indifference. Okay. Thank you. Thank you, Judge Wilkinson. Yes. Judge Rushing, do you have some questions, further questions you'd like to ask? I don't. Thank you. All right. Well, let's hear from Mr. Dadak then, all right? May it please the Court, Chris Dadak on behalf of Dr. Moran. Briefly, I would like to address the jurisdictional argument. Throughout its opinion, the district court repeatedly properly frames the claim as deliberate indifference to a serious medical need for diabetic medication, prescriptive or otherwise. The district court consistently frames the claim that way and includes the fact that Dr. Moran did not prescribe any medication or insulin in his recitation of the material facts. So throughout the opinion, the district court correctly frames the claim as deliberate indifference to a serious medical need and includes insulin or other medication in its analysis. The district court then correctly granted summary judgment. Again, this is on summary judgment when the plaintiff has had an opportunity to go through discovery, develop a full record. The district court correctly analyzed the deliberate indifference standard. And I'm sorry, Judge Wilkinson, your box lit up, and I thought you were going to ask a question. I didn't want to interrupt you. No, no. I was not going to. I'm sorry. I didn't mean to interrupt, and I wasn't – I don't know who's in control of my lights, but I didn't – I'm not about – I did not have a question. You please proceed. Yes, Your Honor. And big picture-wise, the reasoning for district courts is obvious. Hickson never complained of symptoms regarding his diabetes. Yes, he did request insulin, but he never complained of symptoms he attributed to diabetes to his nurses. He filed at least 12 inmate request forms for non-emergency medical treatments. He clearly knew of a process. He did not file a single one for his diabetes. What were the other request forms filed about? Were these other ailments? Yes, Your Honor. They'd be, I believe, sore throats. One was at least back issues. As Ms. Kennelly described, the one interaction that Dr. Moran had with Mr. Hickson, it was regarding his lower back issues, some back pain. And as she pointed out, Dr. Moran asked him about his diabetes, and Hickson responded with, I'm here about my back. And that is an uncontradicted testimony and evidence in front of district court. That the only time Dr. Moran saw Hickson, he raised his diabetes, and Hickson, in response, did not want to discuss it. And so the district court properly framed this case as a disagreement as to treatment. Dr. Moran, based on the variability of Hickson's sugar readings, prescribed a diabetic diet, which is treatment, and also ordered daily blood sugar testing. Now, Mr. Hickson obviously argues that his blood sugar kept rising, and that Dr. Moran did nothing in response. But Dr. Moran did do something in response. He ordered the testing to be increased to twice a day, which makes sense. If he's concerned about the variability of the blood sugar readings, and is concerned about the side effects of medication, including insulin, that may occur due to low blood sugar, that increasing the testing would address that issue. Now, of course, if Mr. Hickson had been incarcerated for longer, and if the twice-a-day testing continued and demonstrated a long pattern of high blood sugar that was unaddressed by Dr. Moran, that could give rise to a claim for deliberate indifference. However, what we have here is an inmate who's incarcerated for approximately five months, where Dr. Moran got to treat him, and it is undisputed that Dr. Moran treated him. Now, Hickson disagrees with the treatment and has an expert that more should have been done. But the standard here, as the court has pointed out multiple times, is deliberate indifference, which requires that Dr. Moran must not just be aware of the inference, but actually draw the inference. And here, there's absolutely no evidence that Dr. Moran drew that inference. And the reason for that, again, is simple, because he had no reason to. Hickson never complained of any symptoms to his nurses. In fact, in the district court's opinion, the objective prong was a close call. By the time he got to sodomy judgment, plaintiff's counsel conceded that there would be no long-term damages. Testimony— Were there any injuries that flowed from this? Well, so they essentially conceded a long-term, Your Honor, and relied on his deposition, on his testimony that he suffered several symptoms during incarceration. Even though he never complained to nurses, he testified as, I believe, blurred vision, paresthesia, and general emotional distress due to his concerns about his blood sugar. And the district court found the objective prong. But that was a close call. But the second prong is not a close call. And, Judge, you obviously pointed out the battle of the experts. And it's clear if this was a negligence standard, then we would likely not be here and we would likely have tried the case and would probably be in front of this court after trial. But on a deliberate indifference standard, you have— Well, as Judge Traxler's question pointed out, the plaintiff's own expert was talking about negligence. And in the oral argument earlier, appellant's counsel was, and I think, you know, it's just candid and the court appreciates the candid. But they were talking—there was a lot of discussion about reasonableness and everything. And when you look at the one expert testimony and you look at the argument, and they're both candid and straightforward, which I appreciate. But the whole thing sounds in negligence if it even rises to that level. Yes, Your Honor. And I would also point out that appellant is opening brief fault of the district court on the gross negligence claim for not viewing it in the perspective of a reasonable jail physician, which, as you pointed out, Judge, Dr. Rupp has never practiced in a jail, unlike Dr. Moran's expert. So that argument is a bit perplexing, but—and I'm going to butcher her name. I apologize. Dr. Schwab has testified as a doctor with experience in the correctional setting, and there are material differences in how some of these factors play in a correctional setting. There's a change in diet, a change in routine, in addition to the difference of the number of, obviously, patients and some familiarity with patients. But what this case is is a case of negligence. Routinely throughout the case, there have been arguments based on reasonableness. But as this court has pointed out, that is not the standard. The standard is deliberate indifference. And what plaintiff must show is that Dr. Moran drew the inference and ignored it. Essentially, as the district court framed it, did not provide the treatment he knew was appropriate and required. That's why in the Cento case, this court found deliberate indifference. And I apologize, Judge Wilkins, if you're trying to talk. Well, in the Cento case, there was something very different from here, because there was a refusal to give medical treatment for a non-medical reason, which was that the doctor reviewed the patient as insubordinate. And so he was rationing medical treatments for completely non-medical reasons. And you don't have any suggestion of that here. Correct, Your Honor. Your Honor phrased it better than I would have, but that was a point I was going to make, that in that case, you had a prescription for a specific medication that was then withheld by the doctor for non-medical reasons. Here, we have a disagreement as to what Hickson's treatment should have been. But we absolutely do not have any evidence that Dr. Moran failed to provide treatment or withheld treatment that he knew to be required. And in Cento, there's also obviously the distinction that it's a type 1 diabetic, whereas Mr. Hickson is a type 2 diabetic. Well, let me ask you this, Counsel. We've been over this. Do you have any further questions or further comments that you wish to make? If you don't, I'm going to just turn it over to my colleagues and ask if they have some questions of you. Do you have anything further to say? No, Your Honor. Well, then let me ask my colleagues if they have any further questions. Judge Rushing, do you have any questions here, Mr. Didak? I don't. Thank you. Judge Traxler? I do not. Thank you for asking. All right. Mr. Didak, we have no further questions. And so what we'd like to do at this time is hear from Ms. Catalina in rebuttal. Sure. Thank you so much. I just wanted to address a couple of brief points. First, about the jurisdiction. It is true that the district court does say insulin or otherwise, that Mr. Hickson received no insulin or otherwise. But our predominant point and the thing that we would really like to send home here is that the district court does not provide any reason, in the face of Mr. Hickson's rising blood sugar levels and in the face of his rising A1C levels in specific, that no metformin would be administered to him. Moreover, it is true that Mr. Hickson made complaints about other issues. Our issue here is that Mr. Hickson is not a physician. He was asking for diabetes. A prisoner should not need to say some sort of magic words. If he's asking for treatment and the risk is sufficiently obvious, that meets the standard for deliberate indifference. Let me just say this on the jurisdictional point. Often district court opinions respond to issues that are raised and that are emphasized in the non-moving party's brief. In this case, as I read, Hickson was complaining about insulin. So the district court emphasized the point that was in the non-moving party's brief. It was a responsive opinion. That's a hard thing to criticize because we do it up here. We look a lot of times at the brief and we can discern from the emphasis that the brief puts on something, what the appellant really wants to put his chips on and what other claims are simply throwaways. We try to respond to that. Sometimes we include the kind of footnote that my friend, Judge Traxler, suggests. I think it's a good thing to do. Other times, we may not. But it's hard for me to criticize a district court for following the train of the deposition because that's what I do sometimes. I just follow the train of the brief. I said, okay, this is the issue that the appellant is really serious about and we'll spend our time addressing it. Sure. Your Honor, our aim here is not to criticize the district court. Our aim here is just to make sure that all of the life claims at the district court level have been addressed in their entirety. And if there had been a little footnote that said, we've considered the claim for metformin and we disregard it, I would be making a different argument here today. But the issue is that no such comment had been made. And it's just not clear whether the district court – That may be a better practice. The question is whether there's a difference between – there's got to be a difference between better practice and reversible error. And it's got to be – what do we do? Send it back for him to include that footnote? I mean, it doesn't – as a practical matter, I'm not sure that makes sense. I agree. It's certainly better practice. But I just think there's a difference between better practice and reversible error. That's my problem. Sure. And I'm not sure we're describing this as – that in particular as reversible error. We're simply saying that it should be remanded because it isn't – we don't – sorry. All right. All right, Ms. Catalina. If my colleagues have any further questions, I'll be delighted to hear them. But otherwise, I want to thank you very much for your argument. And we appreciate the points that you've made. Thank you so much, John.
judges: J. Harvie Wilkinson III, Allison J. Rushing, William B. Traxler Jr.